# EXHIBIT
# 7



# Private Mortgage Insurer Eligibility Requirements

*January 2008*

© Freddie Mac.   All rights reserved.

# Table of Contents

|  | Page No. | Date of Last Update |
|---|---|---|
| **Foreword** | v | 1/2008 |
| **General Information** | | |
| 100 Compliance with Eligibility Requirements | 1 | 1/2008 |
| 101 State Compliance | 1 | 1/2008 |
| 102 Applicable NAIC Regulations | 1 | 1/2008 |
| 103 Type I/Type II Insurers | 2 | 1/2008 |
| 104 Nondiscrimination | 2 | 1/2008 |
| **Application** | | |
| 200 Application Criteria | 3 | 1/2008 |
| 201 Application Submission | 3 | 1/2008 |
| 202 Application Fee | 3 | 1/2008 |
| 203 Appeal of Application Denial | 3 | 1/2008 |
| **Business Requirements** | | |
| 300 Scope of Business | 5-6 | 1/2008 |
| 301 Organization | 6 | 1/2008 |
| 302 Policies, Procedures, Practices | 6-7 | 1/2008 |
| 303 Compliance | 7 | 1/2008 |
| 304 Rebates, Commissions, Charges and Compensating Balances | 7 | 1/2008 |
| 305 Separation of Responsibilities | 8 | 1/2008 |
| 306 Master Policy | 8 | 1/2008 |
| 307 Geographic Concentration and Diversity | 8 | 1/2008 |
| 308 Policies of Insurance | 8 | 1/2008 |
| **Policy Underwriting** | | |
| 400 State Compliance | 9 | 1/2008 |
| 401 Delegated Underwriting | 9 | 1/2008 |
| 402 Evaluation of Borrower Creditworthiness | 9 | 1/2008 |
| 403 Property Valuation | 9 | 1/2008 |

## Table of Contents

| | Page No. | Date of Last Update |
|---|---|---|
| **Quality Control** | | |
| 500  Quality Control Program Requirements | 11 | 1/2008 |
| 501  Quality Control Program Guidelines | 11 | 1/2008 |
| 502  Sampling Guidelines | 12 | 1/2008 |
| 503  Quality Control Loan File Review Guidelines | 13 | 1/2008 |
| 504  Reporting Guidelines | 13 | 1/2008 |
| **Lender Approval and Monitoring** | | |
| 600  Guidelines | 15 | 1/2008 |
| 601  Lender Approval Guidelines | 15 | 1/2008 |
| 602  Lender Monitoring Guidelines | 15-16 | 1/2008 |
| 603  Delegated Underwriting/Limited Documentation Guidelines | 16 | 1/2008 |
| 604  Delegated Underwriting Requirements | 16 | 1/2008 |
| **Financial Requirements** | | |
| 700  State Compliance | 17 | 1/2008 |
| 701  Minimum Total Policyholders' Surplus | 17 | 1/2008 |
| 702  Contingency Reserve | 17 | 1/2008 |
| 703  Loss Reserve | 17 | 1/2008 |
| 704  Liquidity of Assets | 17 | 1/2008 |
| 705  Risk-to-Capital | 18 | 1/2008 |
| 706  Combined Ratio | 18 | 1/2008 |
| 707  Financial Requirements for Captive Reinsurance | 18-22 | 1/2008 |
| **Reports/Documentation/Monitoring** | | |
| 800  Statement of Purpose | 23 | 1/2008 |
| 801  Immediate Notices | 23-24 | 1/2008 |
| 802  Required Scheduled Reports | 25-26 | 1/2008 |
| 803  Required Periodic Reports | 26-27 | 1/2008 |
| 804  Supplemental Information | 27 | 1/2008 |
| 805  Document Retention | 28 | 1/2008 |
| 806  Periodic Reviews | 28 | 1/2008 |

**Table of Contents**

|  | Page No. | Date of Last Update |
|---|---|---|
| **Disqualification or Suspension** | | |
| 900  General Policy | 29 | 1/2008 |
| 901  Consequences of Suspension | 29 | 1/2008 |
| 902  Consequences of Disqualification | 30 | 1/2008 |
| 903  Notice of Intent to Disqualify or Suspend | 30 | 1/2008 |
| **Appeals** | | |
| 1000 Request for Appeal of Application Denial, Suspension or Disqualification | 31 | 1/2008 |
| 1001 Hearings | 31 | 1/2008 |
| 1002 Date of Hearing | 32 | 1/2008 |
| 1003 Conduct of Hearings | 32-33 | 1/2008 |
| 1004 Recommended Decision | 33 | 1/2008 |
| 1005 Final Decision | 33 | 1/2008 |
| **Exhibit** | | |
| Exhibit 1, NAIC Mortgage Guaranty Insurance Model Act | E1 | 1/2008 |
| Exhibit 2, New Product or Program/ Existing Product or Program Revisions Considerations for Periodic Report Submissions | E2 | 1/2008 |
| Exhibit 3, Annual Certification | E3 | 1/2008 |
| **Glossary** | G1-7 | 1/2008 |

# Foreword

**Introduction**

This document contains both requirements and guidelines for obtaining and maintaining Freddie Mac *approved insurer* status. *Approved insurers* must comply with requirements, which are preceded by the term "must."

**Purpose**

The purpose of this document is to inform *approved insurers* of how Freddie Mac will implement the requirements of Section 305(a)(2) of the Federal Home Loan Mortgage Corporation Act, that states, Freddie Mac may purchase mortgages guaranteed or insured by a qualified *approved insurer*.

**Amendments**

The *eligibility requirements* may be amended or supplemented from time to time only by a written communication from Freddie Mac. An amendment to this document is effective on the date specified by Freddie Mac.

Freddie Mac may modify, amend or waive any provision of these *eligibility requirements*, or impose additional requirements, applicable to an individual *approved insurer* or all or a group of *approved insurers*. Any amendments, waivers, or modifications to the *eligibility requirements*, or additional requirements, will be communicated in writing to each *approved insurer* that is subject to the requirement. Any waiver of the *eligibility requirements* must be in writing, signed by Freddie Mac. Any such written waiver, amendment or modification must expressly refer to the *eligibility requirements* and be denoted as a waiver to the *eligibility requirements*.

**Discretion**

Freddie Mac reserves the right to modify, waive, amend and/or impose additional requirements, at any time, to any *approved insurer* regardless of its current status or upon any entity seeking *approved insurer* status, at its sole discretion.

**Defined Terms**

All terms in italics are defined in the glossary located at the back of this document. Terms not defined in the glossary are used in the context of standard industry practice.

# General Information

**100
Compliance
with Eligibility
Requirements**

An *approved insurer* must provide annual written certification of its compliance with Freddie Mac's *eligibility requirements,* including compliance with applicable *eligibility requirements* as described in Section 707 of these requirements for those *captive reinsurance* arrangements where the *approved insurer* is a beneficiary of such *captive reinsurance*. The *approved insurer* must notify Freddie Mac in writing within 15 business days upon discovery of its failure to comply with any one or more of the *eligibility requirements.*

**101
Compliance
with Laws**

An *approved insurer* must maintain compliance with allapplicable laws and regulations, including without limitation:
1) All applicable federal laws, regulations and orders; and
2) The laws and regulationsof its *state* of domicile and each *state* in which it does business.
The *approved insurer* must notify Freddie Mac in writing within 15 business days upon its determination of *material* noncompliance with any applicable law and regulation.

**102
Applicable
NAIC
Regulations**

For the *eligibility requirements* stated in Sections 304, 702 and 703 within this document, Freddie Mac is requiring compliance with the National Association of Insurance Commissioner's *(NAIC) Model Act* (See Exhibit 1, NAIC Mortgage Guaranty Insurance Model Act); unless the laws and regulations prescribed by an *approved insurer's state* of domicile conflict with the *Model Act*, in which case, the *approved insurer* must comply with *state* laws and regulations.

In the event the *NAIC* changes the affected provision(s) of the *Model Act*, the revised *NAIC Model Act* may be adopted by Freddie Mac and this document may be amended. Freddie Mac will inform *approved insurers* of its decision subsequent to any changes.

**General Information**

---

**103**
**Type I/Type II**
**Insurers**

This document refers to *approved insurers* as *Type I insurer* or *Type II insurer*.  Classification as *Type I insurer* or *Type II insurer* is as defined in the Glossary to these requirements.

In the event ratings of an *approved insurer* are dependent, in whole or in part, on *capital support agreement(s)* the *approved insurer* must:
1) Provide Freddie Mac with certified copies of such agreement(s).
2) Notify Freddie Mac and the rating agencies in advance of any change in such agreement(s) that could have a *material* adverse impact on the *approved insurer's* safety and soundness or the value of the insurance provided to Freddie Mac, or immediately in the event of any *material* adverse change in the financial condition of the providers of such agreement(s).

---

**104**
**Non-**
**discrimination**

An *approved insurer's* underwriting guidelines should be applied consistently to each borrower, regardless of race, color, religion, national origin, age, sex, marital status, familial status, or handicap.

---

# Application

| | |
|---|---|
| **200 Application Criteria** | All private mortgage insurers are eligible to apply for Freddie Mac *approved insurer* status. Freddie Mac's approval is based on compliance with the *eligibility requirements,* including the approval of the applicant's master policy, and any other requirement, document or action required at Freddie Mac's discretion. |
| **201 Application Submission** | In order to become an *approved insurer,* an applicant must submit the application form prescribed by Freddie Mac and the applicant's master policies, generally made available to *insureds.* Freddie Mac may require the applicant to supplement the application with additional information or certification, as Freddie Mac may deem appropriate.

Freddie Mac will then determine whether the applicant is deemed an *approved insurer* under such terms and conditions as Freddie Mac may prescribe or whether the applicant is ineligible to become an *approved insurer*. |
| **202 Application Fee** | The applicant must pay to Freddie Mac a nonrefundable application fee of $2,500 at the time of filing an application. |
| **203 Appeal of Application Denial** | If the applicant wishes to appeal the application denial, it must do so pursuant to Section 1000, Request for Appeal of Application Denial, *Suspension* or *Disqualification*. |

**Application**

# Business Requirements

**300
Scope of
Business**

An *approved insurer* must limit its business activities to the underwriting of *mortgage guaranty insurance* secured by *1-4 unit residential properties.*

An *approved insurer* may not enter into any transaction or series of transactions with the effect, or for the purpose of, circumventing these *eligibility requirements.*

An *approved insurer* may enter into a *risk sharing transaction* with a *mortgage enterprise*, or an *affiliate* of a *mortgage enterprise*, only if the *risk sharing transaction* is:

1) A *reinsurance* agreement with a *qualified reinsurer*, entered into in compliance with these eligibility requirements and all applicable legal and regulatory requirements, or

2) Any other *risk sharing transaction* which:

   a) Has not been prohibited by a state that asserts extraterritoriality with respect to insurance regulation (whether or not that state's extraterritorial authority would apply to the *risk sharing transaction* or the *approved insurer* in the absence of this requirement),  and

   b) Complies in all respects with (i) the rules and regulations established by any state asserting extraterritoriality with respect to such *risk sharing transaction* (whether or not that state's extraterritorial authority would apply to the *risk sharing transaction* or the *approved insurer* in the absence of this requirement), and (ii) all other applicable laws and regulations.

*Risk sharing transactions* that constitute or involve non-captive captives or performance notes, as defined by the Insurance Department of the State of New York, are expressly prohibited.

Except as otherwise provided in Section 707 of these *eligibility requirements*, and notwithstanding any other provisions of these *eligibility requirements*, Freddie Mac's express written approval must be obtained for <u>any</u> *risk sharing transaction* which involves ceding over 25% of the gross aggregate risk or premium with respect to a loan or pool of loans and which is entered into with a *mortgage enterprise*, or an *affiliate* of a *mortgage enterprise*, other than a *qualified reinsurer* that is not a *captive reinsurer.*

**Business Requirements**

---

**300
Scope of
Business
(continued)**

These eligibility requirements apply to:

1) Any *reinsurance* agreement, or other *risk sharing transaction* entered into, renewed, extended, modified or amended on or after January 1, 2001, and
2) All loans closed on or after January 1, 2001, irrespective of the date the applicable reinsurance agreement, or other *risk sharing transaction*, became effective or was renewed, extended, modified or amended.

The eligibility requirements in Section 707 apply to any *risk sharing transaction* entered into, renewed, extended, modified or amended after the effective date of the most current version of *eligibility requirements*.

---

**301
Organization**

An *approved insurer* or *captive reinsurer* must be a corporation duly organized pursuant to the laws and regulations of its *state* of domicile (or, in the case of a *captive reinsurer*, its country of organization) and operating according to the laws of the *state(s)* or *country* in which it is licensed or has authority to do business or in which it does business.

---

**302
Policies,
Procedures,
Practices**

An *approved insurer's* or *captive reinsurer's* policies, procedures and practices must be developed and executed on the basis of safe and sound industry standards. An *approved insurer* must also:

1) maintain policies and procedures that ensure timely and accurate payment of claims, and may not unreasonably delay or deny claim payments;
2) have an effective system of internal controls;
3) maintain internal controls processes to ensure that any *reinsurance* agreements with *captive reinsurers* continue to meet the applicable *eligibility requirements*.

An *approved insurer* must have on file an opinion prepared by an independent certified actuary that (i) each *reinsurance* agreement with a *captive reinsurer* constitutes "transfer of risk" and (ii) there is commensurate ceding premium associated with such "transfer of risk" in accordance with applicable regulatory and accounting standards. The opinion may address the *reinsurance* agreements on a program-by-program basis, rather than addressing each individual *reinsurance* agreement separately, so long as the *reinsurance* agreements entered into under the program do not vary from the program in any *material* respect. Examples of *material* changes would include, but not be limited to, changes to ceded premium, ceded risk/risk layer, dividending, risk-to-assets ratios, or required *reinsurance*.

---

| | |
|---|---|
| **302 Policies, Procedures, Practices (continued)** | An *approved insurer* must provide Freddie Mac with full access to all of the *approved insurer's* captive *reinsurance* documentation including but not limited to copies of the *reinsurance* agreement and all associated trust agreement, letters of credit, guarantees, regulatory and accounting opinions, for each captive *reinsurance* transaction.  The names of the lender and *captive reinsurer* may be redacted on all documents, so long as the *approved insurer* provides a written representation and warranty that all documents provided relate to the same *reinsurance* agreement. |
| | An *approved insurer* must provide the *approved insurer's* rating agencies with such access to all of the *approved insurer's* captive *reinsurance* documentation as the rating agency may require. |
| | An *approved insurer* shall have 180 days from the date a captive *reinsurance* agreement, or *captive reinsurer*, fails to comply with any of the requirements set forth in these *eligibility requirements* to bring the captive *reinsurance* agreement into compliance, or to cause the *captive reinsurer* to comply, as applicable.  After such 180-day period, the *approved insurer* must cease ceding additional *reinsurance* risk and premium or be subject to the provisions of Section 903. |
| **303 Compliance** | An *approved insurer* or *qualified reinsurer* must maintain compliance with the applicable federal laws and regulations and the applicable laws and regulations of its *state* or *country* of domicile and each *state* in which it does business and with any other applicable laws or regulations as required by these *eligibility requirements*.  An *approved insurer* must notify Freddie Mac in writing within 15 business days upon its determination of *material* noncompliance with any applicable law and regulation.  Without limiting the foregoing, each *approved insurer* or *qualified reinsurer* shall at all times comply with the Real Estate Settlement Procedures Act. |
| **304 Rebates, Commissions, Charges and Compensating Balances** | When not specified otherwise in its *state* of domicile laws and regulations, an *approved insurer* must comply with the rebates, commissions, charges and compensating balance requirements found in the *NAIC Model Act,* Section 13 - Rebates, Commissions and Charges, Section 14 - Compensating Balances Prohibited, and Section 15(B) - Conflict of Interest.  An *approved insurer* must notify Freddie Mac in writing, within 15 business days upon its determination of *material* noncompliance with these requirements. |
| | **Note:** Freddie Mac is not adopting Section 15(a) of the *NAIC Model Act.* |

**Business Requirements**

| | |
|---|---|
| **305**<br>**Separation of**<br>**Responsibilities** | An employee of an *approved insurer* whose responsibilities include sales for the *approved insurer* must not underwrite or approve insurance on mortgages. Excluded from this restriction are those employees who are in a management position accountable for both sales and underwriting functions. |
| **306**<br>**Master Policy** | An *approved insurer*'s master policies, generally made available to *insureds,* are subject to Freddie Mac approval prior to use.  Any *material* changes or endorsements must be filed with Freddie Mac pursuant to Section 803, Required Periodic Reports. |
| **307**<br>**Geographic**<br>**Concentration**<br>**and Diversity** | In addition to complying with Section 303, State Compliance, a *Type II insurer* must also comply with the following requirements:<br><br>1)  Shall not have more than 20 percent of its total *risk-in-force* in any one Consolidated Metropolitan Statistical Area (CMSA) or Standard *Metropolitan Statistical Area (MSA),* as applicable.  No combination of *risk-in-force* in any one *state* may exceed 40 percent of its total *risk-in-force*.  An new *approved insurer* shall have three years from the date of its first policy issuance, to meet such requirement.<br>2)  Shall not insure mortgages secured by properties in a single housing tract or a contiguous tract where the *risk-in-force* applicable thereto is in excess of 10 percent of its *total policyholders' surplus.*<br>3)  Shall not insure mortgages secured by a single risk in excess of 10 percent of its *total policyholders'* surplus. |
| **308**<br>**Policies of**<br>**Insurance** | An *approved insurer* must maintain policies of insurance (such as Fidelity, E&O, and hazard insurance on acquired *REO,* etc.) or provide for a reserve for self-insurance in accordance with its *state* of domicile laws and regulations. |
| **309 Business**<br>**Continuity**<br>**Planning** | An *approved insurer* must maintain business continuity plans and test such plans periodically to ensure that the *approved insurer*'s business operations are sustainable in the event of disaster or other event requiring the activation of a business continuity plan. |

# Policy Underwriting

**400
State Compliance**

An *approved insurer* must maintain compliance with applicable federal laws and regulations and the applicable laws and regulations of its *state* of domicile and each *state* in which it does business. The *approved insurer* must notify Freddie Mac within 15 business days upon its determination of *material* noncompliance with any applicable law and/or regulation.

**401
Delegated
Underwriting**

*Delegated underwriting* may be utilized provided that the *approved insurer* has established an adequate system of controls and safeguards, including, but not limited to, a lender approval and monitoring process, and a quality control (QC) program to ensure compliance with the *approved insurer's* underwriting standards. (Refer to Quality Control, Sections 500-504 and Lender Approval and Monitoring, Sections 600-604 for requirements and guidelines.)

**402
Evaluation of
Borrower
Creditworthiness**

An *approved insurer* or its delegated underwriter must determine the creditworthiness of the borrower prior to issuing a certificate or policy of insurance.

The *approved insurer* or its delegated underwriter must determine that the borrower has the willingness and financial ability to make timely repayment of the home mortgage being insured. The determination of creditworthiness should be made with specific consideration to the characteristics of the mortgage and repayment terms and be based on a thorough evaluation of all pertinent credit information.

**403
Property
Valuation**

The *approved insurer* must establish a methodology for property valuation that will allow the *approved insurer* or its delegated underwriter to determine that the subject property is of sufficient market value to support the decision to insure, and should include a soft market policy, as appropriate.

As a guideline, an *approved insurer's* risk management controls should provide for the identification and reverification of fraudulent appraisals or other property valuations or unsubstantiated values found in the underwriting, quality control, and claims areas, including loans insured under delegated underwriting programs.

**Policy Underwriting**

# Quality Control

**500
Quality
Control
Program
Requirements**

An *approved insurer* must operate a quality control (QC) program to assess the effectiveness of its underwriters and that of its *delegated underwriting* programs.  While Freddie Mac does not believe that any one specific QC program can meet the needs of all *approved insurers*, certain common characteristics are found in all effective QC programs.  These common characteristics are the foundation of Freddie Mac's requirements.  An *approved insurer's* QC program must:

1) Contain documented standard operating procedures for the entire QC process.
2) Operate independently from the sales function, the area that underwrites and/or approves mortgages for insurance.
3) Determine whether the underwriting decisions made were consistent with the *approved insurer's* policies and procedures and expectations for quality.
4) Ensure that areas where improvement, training, or other corrective actions are needed are brought to the attention of, acknowledged by, , and implemented at the direction of senior management.

**501
Quality
Control
Program
Guidelines**

The information provided in Sections 502 - 504 is presented as guidelines for consideration and such guidelines are encouraged, but not required to obtain or maintain Freddie Mac *approved insurer* status.  Guidelines are denoted by the term "should."

**Quality Control**

| | |
|---|---|
| **502 Sampling Guidelines** | A selection method should be used that ensures that every type of transaction has a chance of being selected for review within a specified period of time after the decision to insure is made (including both new production mortgages and seasoned mortgages).  The selection method should also include provisions for expanded, discretionary and targeted sampling as needed. |

The appropriate frequency of sampling by an *approved insurer* is dependent on a variety of factors, one of which may be the volume of business.  Minimum sampling rates should be representative of the *approved insurer's* business and result in a statistically valid sampling of loans insured and perhaps on loans declined for insurance.

The sampling should take into account the individual characteristics of the *approved insurer's* business, including but not limited to such areas as:

1) Experience and expertise of its underwriting staff and/or the delegated underwriters
2) Geographic areas of insured mortgages
3) Volume of transactions, especially those with high-risk characteristics
4) Distribution of risk exposure among lenders
5) Types of insurance programs offered
6) Any significant changes in the *approved insurer's* business, such as a new product or new geographic area served
7) Areas of rapid appreciation or depreciation
8) Increased incidence of fraud, flipping, straw buyers or rapid prepayment

**Delegated Underwriting Sampling**

Increased sampling and scope of reviews is expected when *approved insurers* delegate the decision to insure.  This increased sampling and scope may be modified as the *approved insurer* gains confidence in the ability of the delegated underwriter to make appropriate decisions on insurability.

**503**
**Quality**
**Control Loan**
**File Review**
**Guidelines**

The review itself should focus on evaluating the quality of the documentation provided at the time of the insuring decision, and the reasonableness of the original underwriting decision.

The QC review should examine file contents for completeness and for their use as a basis for the underwriting decision.  For cases with *delegated underwriting,* or where the package submitted to the *approved insurer* for decision was less than the completed mortgage file (limited document approvals), the *approved insurer's* review may include a request to view the complete original mortgage file.

The following information should be reverified on a sample basis through the QC process:

1)  Borrower's employment
2)  Borrower's income
3)  Borrower's deposits and sources of funds used for down payment and closing costs
4)  Borrower's credit history

In addition, the appraised value of the insured property should be reviewed on a sample basis through the QC process.  As a general guideline, an *approved insurer's* risk management controls should also provide for the identification and reverification of fraudulent appraisals or other property valuations, or unsubstantiated values found in the underwriting, quality control, and claims areas, including loans insured under delegated underwriting programs.

**504**
**Reporting**
**Guidelines**

The QC program should include regular reporting of findings to senior management.  Monthly reporting of results is suggested, with immediate reporting recommended to senior management in the event that fraud is suspected.  The findings are a basis for ongoing feedback and training to both staff and the *insured,* as well as a key component in the *approved insurer's* efforts to detect fraud.

**Quality Control**

# Lender Approval and Monitoring

| | |
|---|---|
| **600**<br>**Guidelines** | The information provided in Sections 601-603 is presented as <u>guidelines</u> for consideration and such guidelines are encouraged, but not required to obtain or maintain Freddie Mac's *approved insurer* status unless denoted by the term "must."  Guidelines are denoted by the term "should." |
| **601**<br>**Lender Approval**<br>**Guidelines** | In addition to the requirements stated under Section 604, Delegated Underwriting Requirements, an *approved insurer* is encouraged to have and apply written standards and procedures for evaluating and approving the lenders from whom they receive requests to insure mortgage loans.  These procedures should be applied to all lenders and should include steps sufficient to allow the *approved insurer* to know the quality of the lender from whom it will receive business.  The level of inquiry and information reviewed may vary depending on the scope and level of business with the lender.  The following areas of consideration are recommended:<br><br>1)  The lender's appraiser and broker and correspondent  approval and monitoring processes<br>2)  The lender's fraud prevention controls<br>3)  The lender's historical loan performance |
| **602**<br>**Lender**<br>**Monitoring**<br>**Guidelines** | An *approved insurer* should monitor the quality and performance of its master policyholders.  Management should receive regular monitoring reports about each lender relationship.  By doing so, it can make an informed decision on whether to continue the business relationship. |

**Lender Approval and Monitoring**

---

**602
Lender
Monitoring
Guidelines
(continued)**

Some indicators of a lender's overall performance may include:

1)  Volume of business and market share trends
2)  Claims paid ratios
3)  Delinquency information, including early payment defaults
4)  Reject rates
5)  Servicing problems or trends
6)  Underwriting discrepancies allowed/exceptions granted
7)  QC results
8)  Records of any performance issues and their resolution
9)  Changes in key personnel, such as senior management, or those underwriting or servicing insured mortgages
10) Changes in payoff activity

The amount of monitoring the *approved insurer* should perform directly relates to the amount of risk it is taking from a particular lender. This will vary with volume, type of loans insured, geographic location and servicing characteristics.

---

**603
Delegated
Underwriting/
Limited
Documentation
Guidelines**

If the lender has *delegated underwriting* or submits mortgages under a limited documentation program, the increased risk (of a potential poor decision to insure) should be offset by increased monitoring steps, such as selective reunderwriting or periodic requests for full documentation. More frequent reviews may also be appropriate.

---

**604
Delegated
Underwriting
Requirements**

**Approval**
If the lender is performing *delegated underwriting* for the *approved insurer,* the *approved insurer* <u>must</u> perform a level of due diligence, incorporating an assessment of the areas mentioned in Section 401, Delegated Underwriting, sufficient to ascertain if the lender is capable of meeting the *approved insurer's* quality expectations.

**Monitoring**
The overall performance of an *approved insurer's delegated underwriting* program must be tracked separately, by lender, from other insured loans.

---

# Financial Requirements

## Basic Financial Requirements for all *Approved Insurers* (700-703)

**700
State
Compliance**

An *approved insurer* must maintain compliance with the applicable laws and regulations of its *state* of domicile and each *state* in which it does business.  The *approved insurer* must notify Freddie Mac within 15 business days upon its determination of *material* noncompliance with any applicable law and regulation.

**701
Minimum Total
Policyholders'
Surplus**

All Freddie Mac *approved insurers* must meet and maintain a minimum *total policyholders' surplus a)* as required to comply with applicable laws and regulations of its *state* of domicile and each *state* in which it does business and b) if the *approved insurer* is a *Type I insurer*, to maintain ratings necessary to retain *Type I insurer* status unless specifically approved otherwise by Freddie Mac.

**702
Contingency
Reserve**

If the applicable *state* laws and regulations do not address *contingency reserve*, the *approved insurer* must comply with the *NAIC Model Act,* Section 16(C), Contingency Reserves.

**703
Loss Reserve**

If the applicable *state* laws and regulations do not address loss reserve, the *approved insurer* must comply with the *NAIC Model Act*, Section 16(B), Loss Reserves.

## Additional Requirements for *Type II Insurers* (704-706)

In addition to the basic financial requirements, a *Type II insurer* must comply with the requirements stated in Sections 704-706.

**704
Liquidity of
Assets**

A *Type II insurer* must maintain not less than 90 percent of total *admitted assets* in the form of *liquid assets*.

**Financial Requirements**

| | |
|---|---|
| **705**<br>**Risk-to-Capital** | A *Type II insurer* must not at any time have total *risk-in-force* in excess of 15 times its *total policyholders' surplus.* |

| | |
|---|---|
| **706**<br>**Combined**<br>**Ratio** | A *Type II insurer* must not have a *combined ratio* computed on an annual basis in excess of 85 percent for more than one calendar year. |

## Additional Requirements for Captive Reinsurance Transactions (707)

| | |
|---|---|
| **707**<br>**Financial**<br>**Requirements**<br>**for Captive**<br>**Reinsurance** | The following requirements shall apply to transactions involving a *captive reinsurer*: |

1) The ceding *approved insurer* must at all times be a *Type I insurer.* A *Type I insurer* that becomes a *Type II insurer* for any reason must, within 15 days of the date it becomes a *Type II insurer,* provide notice to the *captive reinsurer* that it will cease reinsuring new risk with the *captive reinsurer* no later than 90 days subsequent to the *Type II insurer*'s notice to the *captive reinsurer.*

2) The *reinsurance* agreement between an *approved insurer* and *captive reinsurer* may permit allocation of expenses, provided that the allocated expenses must be (i) commercially reasonable, and (ii) directly related to the acquisition and administration of the loans for which premium is ceded.

3) Premium ceded or assumed with respect to any *reinsurance* agreement that involves a *captive reinsurer* as a party shall not be disproportionate to the risk ceded or assumed. Ceded premium may only be paid as received.

**707
Financial
Requirements
for Captive
Reinsurance
(continued)**

4) Any *reinsurance* obtained by a *captive reinsurer* on ceded risk from a *Type I insurer* must be obtained from a *qualified reinsurer*.  For purposes of this requirement only, the definition of *qualified reinsurer* (i) includes the ceding *Type I insurer* itself, and (ii) does <u>not</u> include (a) any company that qualifies as a *qualified reinsurer* only because it is an *affiliate* of a ceding *Type I insurer* with the sole purpose of providing *reinsurance* for the ceding insurer, or (b) a *captive reinsurer*.  The *captive reinsurer* obtaining *reinsurance* must have on file an opinion prepared by an independent actuary certifying that each *reinsurance* agreement with a *qualified reinsurer* (i) constitutes real "transfer of risk" and (ii) there is commensurate ceding premium associated with such "transfer of risk" in accordance with applicable regulatory and accounting standards.  The opinion may address the *reinsurance* agreements on a program-by-program basis, rather than addressing each individual *reinsurance* agreement separately, so long as the *reinsurance* agreements entered into under the program do not vary from the program in any *material* respect.

5) For *reinsurance* agreements providing for coverage on a quota-share or excess-of-loss basis:

    a) With respect to any loan or pool of loans, the aggregate amount of gross risk and/or gross premium ceded under all *reinsurance* agreements may not exceed 50%, either directly or indirectly, and

    b) With respect to any loan or pool of loans, if any risk is reinsured in which either the aggregate gross ceded risk or the aggregate gross ceded premium exceeds 25%, the *captive reinsurer* must at all times:

        i) maintain a rating of AA- or Aa3 by a Freddie Mac-approved rating agency, or

        ii) maintain a minimum *restricted asset balance* of not less than $35,000,000.00.  To meet this requirement, the *restricted asset balance* may include

            (1) the aggregate *restricted asset balances* in all mortgage guaranty *reinsurance* trusts maintained by a *captive reinsurer* or

            (2) the aggregate *restricted asset balances* contained in all such trusts held by all the *captive reinsurers* which are wholly-owned subsidiaries of the same *mortgage enterprise*.  The *restricted asset balance* in each trust must be in proportion to the risk in that trust.

**Financial Requirements**

---

**707
Financial
Requirements
for Captive
Reinsurance
(continued)**

6) Whether or not balance sheet credit for the *reinsurance* is sought by the *approved insurer*, all *reinsurance* agreements must provide for, and the *approved insurer* and the *captive reinsurer* must execute and at all times maintain, trust agreements wherein the *approved insurer* is the beneficiary of the trust and the *captive reinsurer* is the grantor of the trust, and the trust is established, collateralized and maintained in compliance with standards pertaining to collateralization set forth in NY Ins. Ch. 27, Article 65, § 6507 and § 6501(g), 11 NYCRR § 79 and § 126.5, or any successor statutes or regulations.  The trust must be funded only by ceded premiums, the *mortgage enterprise*, or investment earnings on trust assets. *Reinsurance* agreements that do not cover multiple book-years are prohibited.  Independent trusts may not be established for each book-year covered by the *reinsurance* agreement.  In addition,

a) The trustee must hold all trust assets in the U.S.

b) The trustee must be a bank or trust company organized and domiciled in the U.S, or a U.S. branch of a foreign banking organization that is subject to regulatory supervision in the U.S.

c) The trustee must not be a parent, subsidiary or *affiliate* of the *captive reinsurer*.

d) Investment of trust assets must comply with the requirements of 11 NYCRR § 126.5, except that up to five percent (5%) of the aggregate value of all investments need not meet the quality requirements of that regulation; provided that no portion of the 5% is an investment in the equity or debt securities or other obligations of an *affiliate* of the *captive reinsurer*.

e) Effective as of December 31, 2008, *mortgage guaranty insurance* tax and loss bonds issued under or in accordance with 31 C.F.R. § 343 et. seq., shall not count as assets held by the trust for purposes of calculation of the *risk-to-assets ratio* or minimum trust account balance or aggregate minimum trust account balances as required below or elsewhere in these requirements.

7) In the event of a conversion of one type of *reinsurance* agreement to another (e.g., excess-of-loss to quota-share), the new agreement must cross-collateralize trust assets relating to all book years under the previous agreement with the ceding company.

---

**707
Financial
Requirements
for Captive
Reinsurance
(continued)**

8) With respect to *captive reinsurers* who do not maintain a rating of AA- or Aa3 by a Freddie Mac-approved rating agency:

   a) Except and only to the extent necessary to pay commercially reasonable operating expenses and taxes due and payable, at all times the *risk-to-assets ratio* with respect to the trust established in connection with each *reinsurance* agreement shall not exceed the following:

      i) 10:1 for an excess-of-loss agreement, or

      ii) 20:1 for a quota-share agreement

   b) Except and only to the extent necessary to pay commercially reasonable operating expenses and taxes due and payable, distribution of assets from the trust to the *captive reinsurer* may be made only if, before and after such distributions, the *restricted asset balance* is not less than the greater of:

      i) the reinsurer's share of the contingency reserve, or

      ii) an amount such that the *risk-to-assets ratio* does not exceed:

         (1) 5:1 for an excess-of-loss agreement, or

         (2) 15:1 for a quota-share agreement.

**Financial Requirements**

---

**707
Financial
Requirements
for Captive
Reinsurance
(continued)**

    c)   With respect to conversions of one type of *reinsurance* agreement to another, e.g., excess-of-loss to quota-share, the risk associated with each type of agreement must comply with the maximum *risk-to-assets ratio* requirements and the distribution of assets requirements applicable to such agreement, as set forth in this section.  In such case, the minimum required aggregate trust account balance shall be determined as the sum of the minimum trust account balances for each type of *reinsurance* agreement under the foregoing requirements.

9)   *Ceding commission* or an equivalent arrangement shall be included in every quota-share *reinsurance* agreement with a *captive reinsurer* or obtained by a *captive reinsurer*, and shall accurately reflect the commercially reasonable costs incurred in the course of underwriting and administering the reinsured coverage.

10)  Ceding commission or an equivalent arrangement on excess-of-loss agreements with a *captive reinsurer* or obtained by a *captive reinsurer* are not required.

---

Private Mortgage Insurer Eligibility Requirements

# Reports/Documentation/Monitoring

**800
Statement of
Purpose**

Documents submitted in accordance with this chapter will be evaluated to determine compliance with the *eligibility requirements* and to evaluate an *approved insurer's* practices.

**801
Immediate
Notices**

An *approved insurer,* and any *affiliate* of a ceding *Type I insurer* with the sole purpose of providing *reinsurance* for the ceding *Type I insurer*, must notify *Freddie Mac* in writing of any of the events listed below within 15 business days of its occurrence.  The notice of the change must describe the event with reasonable specificity, without reference to any other documents.

1) Upon receipt of notice of *material* noncompliance with any applicable law and regulation of its *state* of domicile or any *state* in which it is licensed or has authority to do business.

2) Upon investigation of or *material* action by any *state* attorney general, or by any other regulatory or enforcement body of any *state* in which the *approved insurer* or *affiliate* is authorized to transact business (information requests in the normal course of business are not investigations for the purposes of this requirement).

3) Upon discovery of noncompliance with the *eligibility requirements.*

4) Upon notification that any one of the Fitch, Moody's, or S&P rating has been affirmed or confirmed, or has been or will be decreased, regardless of whether the rating affects the *approved insurer's* classification as a *Type I* or *Type II insurer.*  (For example, placement on Creditwatch or other watchlist.)

5) Upon notification that any rating for a *captive reinsurer* or captive *reinsurance* agreement fails to meet the minimum standards set forth in section 707 of these *eligibility requirements* for such arrangements, if ratings are used to qualify the *captive reinsurer* or captive *reinsurance* agreement under these requirements.

6) It goes into *run-off.*

7) Any *material* change occurs in its ownership or organization.  Such change may include, but is not limited to, a merger, consolidation, sale or transfer of stock, name change or change in its senior management or the membership of its board of directors.

8) Any *material* adverse change in the financial condition or performance of an *approved insurer* or actions or events that threaten *material* adverse change.

9) It is placed into supervision, conservatorship or liquidation.

**Reports/Documentation/Monitoring**

**801
Immediate
Notices
(continued)**

10) It is put on probation or its activities are restricted in any manner by any agency of the federal or *state* government.

11) Receipt of notification of any action or investigation by the Securities and Exchange Commission (SEC), Federal Trade Commission (FTC), Department of Justice (DOJ), the Department of Housing and Urban Development (HUD) or any *material* action by any other federal regulatory body or enforcement agency (information requests in the normal course of business are not investigations for the purposes of this requirement).

12) It becomes subject to any judgment, order, finding, or regulatory action that would adversely affect the *approved insurer*'s ability to comply with the terms and conditions of the *eligibility requirements.*

13) Any change to any existing *capital support agreement(s)* and/or execution of a new *capital support agreement* for the benefit of, or provided by the *approved insurer* that could have a *material* adverse impact on the value of the insurance provided to *Freddie Mac* or the safety and soundness of the *approved insurer.*

14) Discovery of any conflict between applicable laws and regulations and any provision of these *eligibility requirements* or the terms and conditions of approval.

An *approved insurer,* and any *affiliate* of a ceding *Type I insurer* with the sole purpose of providing *reinsurance* for the ceding insurer, must notify *Freddie Mac* within 30 days of determination that any *risk sharing transaction,* or special program or structure or insurance of non-standard loans is likely to have a *material* adverse impact on the value of the insurance provided to *Freddie Mac* or the safety and soundness of the *approved insurer.*

An *approved insurer*, and any *affiliate* of a ceding *Type I insurer* with the sole purpose of providing *reinsurance* for the ceding insurer, must provide *Freddie Mac* with details of any *reinsurance* agreements under which risk is ceded to a reinsurer rated less than AA- by Fitch or S&P, or Aa3 by Moody's within 30 days of entering into the agreement or of ratings action by one or more rating agency (does not apply to *captive reinsurance* agreements or *reinsurance* agreements with an affiliate of the *approved insurer*).

Private Mortgage Insurer Eligibility Requirements

**802
Required
Scheduled
Reports**

## Quarterly Reports

An *approved insurer,* and any *affiliate* of a ceding *Type I insurer* with the sole purpose of providing *reinsurance* for the ceding *Type I insurer*, either individually or on a consolidated basis, must file Form 443 with *Freddie Mac* within 45 days after the end of each quarter, except for the last quarter of each calendar year.  The report for the last quarter of a calendar year must be filed with *Freddie Mac* within 60 days after the end of that calendar year.

When submitting the Form 443, the insurer must also notify *Freddie Mac* that funds have been removed from the *contingency reserve* during the previous quarter if removed prior to the 10 year hold period specified in the *NAIC Model Act*, Section 16(c), Reserves.

An *approved insurer* must, within 45 days after the end of each quarter (except for the last quarter of each calendar year;  the report for the last quarter of a calendar year must be filed with *Freddie Mac* within 60 days after the end of that calendar year):

1)  file a quarterly report on a consolidated basis for all captive *reinsurance* agreements and individually for each of the *approved insurer's* top 10 *captive reinsurers* (measured by aggregate dollar amount of potential exposure reinsured with such *captive reinsurer*) and any *captive reinsurer* that must meet the minimum *restricted asset balance* standards outlined in section 707 herein with respect to captive *reinsurance* arrangements above 25% ceded risk and/or premium.  Such report must include:
    a)  gross and ceded premium
    b)  gross and ceded new insurance written
    c)  gross and ceded risk in force (and by policy year)
    d)  trust account balances
    e)  ceding commissions received
2)  file a quarterly report on a consolidated basis for all *reinsurance* agreements with *qualified reinsurers* that are not *captive reinsurers* and individually for each of the top 10 *qualified reinsurers* that are not *captive reinsurers*.  Such report must include:
    a)  reinsurer ratings for the top 10 *qualified reinsurers*
    b)  ceded risk in force

**Reports/Documentation/Monitoring**

---

**802
Required
Scheduled
Reports
(continued)**

**Annual Reports**

Each *approved insurer*, and any *affiliate* of a ceding *Type I insurer* with the sole purpose of providing *reinsurance* for the ceding insurer, is required to submit the following reports to *Freddie Mac* by April 15 (unless such reports are available on or through links on the web site of the *approved insurer* or its parent company within such time period):

1) An annual *Convention Statement* as filed with *state* insurance regulatory authorities and all correspondence relating thereto.

2) An annual "Certificate of Compliance" which states that it is in compliance with the *eligibility requirements.* The form of such certificate is prescribed by *Freddie Mac* in Exhibit 3 and must be signed by an authorized officer of the *approved insurer.*

3) An audit report prepared by an independent certified public accountant or in lieu thereof a copy of Form 10K for the *approved insurer* or its parent company as filed with the Securities and Exchange Commission, attaching a schedule which will reconcile the audited consolidated financial statements included in the Form 10K with the statutory financial statements of the *approved insurer*, if such reconciling schedule exists (reconciling schedule must be provided as soon as available if not typically available by April 15).

4) *Material* changes in generally applicable premium rates for its most commonly insured loans.

5) The *approved insurer's* statement of actuarial opinion.

---

**803 Required
Periodic
Reports**

An *approved insurer*, and any *affiliate* of a ceding *Type I insurer* with the sole purpose of providing *reinsurance* for the ceding *Type I insurer*, must submit the following for approval to *Freddie Mac* 30-days prior to their effective date if there is a potential *material* impact on the operations or financial obligations of the *approved insurer* or *Freddie Mac*:

1) Master policy endorsements.

2) Documentation related to new or special products or programs or revisions to existing products or programs.

In assessing potential *material* impact of new products or programs or revisions to existing programs, an *approved insurer*, and any *affiliate* of a ceding *Type I insurer* with the sole purpose of providing *reinsurance* for the ceding *Type I insurer*, must consider the items listed on Exhibit 2 hereto titled 'New Product or Program/ Existing Product or Program Revisions – Considerations for Periodic Report Submissions.

---

**803 Required Periodic Reports (continued)**

An *approved insurer*, and any *affiliate* of a ceding *Type I insurer* with the sole purpose of providing reinsurance for the ceding *Type I insurer*, must submit the following documents for approval regardless of *materiality*:

> New master and pool policies generally made available to *insureds,* no later than 30-days prior to the effective date of the policy.

For informational purposes, the following documents must be submitted to *Freddie Mac* no later than 15 days after their preparation or release date (unless they are available on or through links on the web site of the *approved insurer* or its parent company within such time period):

1) Any financial statements or other reports furnished to stockholders of publicly held companies.
2) Filings made with the Securities and Exchange Commission pursuant to the Securities Act of 1933 and/or the Securities Exchange Act of 1934 (including all exhibits and all amendments) material to the continuing eligibility of the *approved insurer,* and any *affiliate* of a ceding *Type I insurer* with the sole purpose of providing *reinsurance* for the ceding insurer.
3) An annual report to policyholders.

**804 Supplemental Information**

At any time, *Freddie Mac* reserves the right to request any additional reports and documents which may contain information relating to the *approved insurer's* compliance with the *eligibility requirements* or the *approved insurer's* practices, or the *eligibility requirements* or practices of any *affiliate* of a ceding *Type I insurer* with the sole purpose of providing *reinsurance* for the ceding insurer. *Freddie Mac* also reserves the right to request any report identified in this document on a more frequent basis.

**Reports/Documentation/Monitoring**

---

**805
Document
Retention**

An *approved insurer*, and any *affiliate* of a ceding *Type I insurer* with the sole purpose of providing *reinsurance* for the ceding insurer, must retain documents and records that are necessary to demonstrate compliance with the *eligibility requirements*. Documents must be retained in accordance with the *approved insurer's state* of domicile laws and regulations with respect to document retention. In the absence of such laws and regulations, such documents must be retained for a period of three years.

An *approved insurer*, and any *affiliate* of a ceding *Type I insurer* with the sole purpose of providing *reinsurance* for the ceding insurer, is required to maintain records with respect to claim denials, policy cancellations and partial settlements in accordance with the requirement stated above. These records must also indicate the percentage and dollar amount of partial settlements, the amount of any claim denial or policy cancellation, as well as the reason for these actions.

The files with respect to each settled claim must contain such information and documentation as necessary to show that losses were computed pursuant to requirements of the master policy.

The *mortgage payment record* must be maintained by either the *approved insurer* or the *insured*. If the *insured* maintains the record, the *approved insurer* must employ adequate controls documenting the maintenance and quality of such records.

---

**806
Periodic
Reviews**

Periodically, at *Freddie Mac*'s discretion, *Freddie Mac* will conduct on-site reviews of an *approved insurer* and/or any *affiliate* of a ceding *Type I insurer* with the sole purpose of providing *reinsurance* for the ceding insurer to ensure an understanding of the *approved insurer's* ongoing ability to meet obligations to *Freddie Mac*.

An *approved insurer*, and any *affiliate* of a ceding *Type I insurer* with the sole purpose of providing *reinsurance* for the ceding *Type I insurer*, must give *Freddie Mac* personnel access to documents and staff necessary to determine the *approved insurer*'s compliance with *eligibility requirements* and evaluate the *approved insurer*'s practices.

---

Private Mortgage Insurer Eligibility Requirements

# Disqualification or Suspension

**900**
**General Policy**

If at any time *Freddie Mac* believes that an *approved insurer* has violated, is violating or is about to violate any of the *eligibility requirements*, or *Freddie Mac* has significant concerns regarding the *approved insurer*'s safety and soundness or ability to honor obligations to *Freddie Mac*, *Freddie Mac* may take any one or more of the following actions:

1) *Freddie Mac* may in its discretion, issue a warning to an *approved insurer* that it has violated, is violating, or is about to violate any of the provisions of the *eligibility requirements,* and that unless corrective action is taken within a specified time period, *disqualification* or *suspension* may result. This warning may be given by *Freddie Mac* as part of an audit report or as a result of any other review or investigation of the *approved insurer* by *Freddie Mac*.

2) An informal warning may be given to the *approved insurer* that expresses *Freddie Mac*'s concern and suggests possible corrective actions.

3) The *approved insurer* may be disqualified or suspended in accordance with Section 903, Notice of Intent to Disqualify or Suspend.

4) Impose additional terms and conditions of approval, including corrective action.

5) Reclassify a *Type I insurer* as a *Type II insurer*.

**901**
**Consequences**
**of Suspension**

During a period of *suspension*, *Freddie Mac* will not purchase mortgages insured by a suspended *approved insurer* undertaking remedial action in order to comply with all provisions of the *eligibility requirements*. During this period, however, *Freddie Mac* may permit renewals of existing *mortgage guaranty insurance* coverage issued by the suspended mortgage insurer for mortgages serviced for *Freddie Mac* and provide Seller/Servicers appropriate notices consistent with the foregoing actions.

## Disqualification or Suspension

---

**902
Consequences
of
Disqualification**

*Freddie Mac* will refuse to purchase mortgages insured by a disqualified *approved insurer*, and will not permit renewals of existing *mortgage guaranty insurance* for mortgages serviced for *Freddie Mac*.

*Freddie Mac* will notify all of its Seller/Servicers that it will not purchase mortgage loans insured by the disqualified *approved insurer* or permit renewals of existing insurance. *Freddie Mac* may negotiate transfer of the existing insurance in-force to other *approved insurer*(s).

If an *approved insurer* wishes to voluntarily discontinue compliance with the terms and conditions of approval, the *approved insurer* must inform *Freddie Mac* 30 days in advance, in writing. Upon receipt of written notification, *Freddie Mac* will discontinue approval of the *approved insurer*. *Freddie Mac* will not purchase mortgages insured by the former *approved insurer* and at its sole discretion may not permit renewals of existing insurance. *Freddie Mac* will provide Seller/Servicers with notices consistent with the foregoing actions.

A disqualified or voluntarily discontinued *approved insurer* will be responsible for any costs associated with the substitution of insurance exceeding the amount of renewal premiums due.

---

**903
Notice of
Intent to
Disqualify or
Suspend**

*Freddie Mac* will provide the *approved insurer* with not less than 30 days prior written notice of an intent to disqualify or suspend unless *Freddie Mac* determines, at its sole discretion, that a shorter or no notice period is necessary or advisable to protect *Freddie Mac*'s interests.

Certain violations of the *eligibility requirements* are viewed with particular seriousness by *Freddie Mac*, including but not limited to, violations pertaining to an *approved insurer's* safety and soundness or its claims paying ability. In such cases, *Freddie Mac* will act without prior written notice to disqualify or suspend the *approved insurer*. If prior written notice is not provided, *disqualification* or *suspension* will become effective upon oral notice from *Freddie Mac* to the *approved insurer*. Written confirmation of that oral notice will follow.

---

Private Mortgage Insurer Eligibility Requirements

# Appeals

**1000
Request for
Appeal of
Application
Denial,
Suspension or
Disqualification**

The applicant may write to *Freddie Mac* to appeal an application denial
and an *approved insurer* may write to *Freddie Mac* to appeal a
determination to disqualify or suspend pursuant to Section 903, Notice of
Intent to Disqualify or Suspend.

The appeal must be postmarked or hand delivered no later than 15 days

1) From the date the applicant or *approved insurer* received written
   notice of action from *Freddie Mac* or
2) From the date the *approved insurer* received written confirmation of
   *Freddie Mac*'s oral notice of action, if prior written notice was not
   provided by *Freddie Mac*.

If an appeal is not filed within the 15-day period, the applicant or
*approved insurer* will be deemed to have forfeited its right to appeal.
The appeal must contain the following, in the order indicated:

1) A cover page bearing the names and addresses of the applicant or
   *approved insurer* and its representative, if any.
2) A reference to *Freddie Mac*'s action or proposed action and a concise
   statement of the case.
3) A listing in separate numbered paragraphs of each on the grounds on
   which the applicant or *approved insurer* relies.
4) The argument, generally amplifying the applicant or *approved
   insurer's* grounds for appeal and clearly exhibiting the points of fact,
   policy, and law being presented.
5) A conclusion, specifying the action the applicant or *approved insurer*
   believes *Freddie Mac* should take.

**1001
Hearings**

The requirements of Sections 1002 and 1003 shall be applicable to any
circumstances in which the *eligibility requirements* provide for an
opportunity for a hearing or *Freddie Mac* determines that a hearing
should be held.  Generally, an evidentiary hearing will not be a necessary
part of the appeal process.  *Freddie Mac* reserves the right, however, to
schedule an evidentiary hearing when appropriate.

**Appeals**

**1002
Date of
Hearing**

*Freddie Mac* shall by resolution or order establish a date for such hearing. That date shall be no more than 60 days after receipt from an applicant or *approved insurer* of the request for a hearing.  Such resolution or order shall be served upon all interested parties, shall state the time, place and nature of the hearing, and, if a presiding officer has been designated by *Freddie Mac* to preside at the hearing, the name and address of the presiding officer.

**1003
Conduct of
Hearings**

In such cases, *Freddie Mac* will be represented by its general counsel or the counsel's designee.  *Freddie Mac* will appoint an individual from within or outside *Freddie Mac* to serve as presiding officer at any hearing. The presiding officer will establish the rules and procedures under which the hearing will be conducted.  At a minimum, the rules for the hearing will provide for the taking of oral testimony under oath, the taking of documentary evidence, and the transcription of the hearing.  The rules of evidence will not apply to the proceedings, but the presiding officer will retain discretion to exclude clearly irrelevant, repetitious, or untrustworthy evidence.  The presiding officer shall have all powers necessary to that end, including, but not limited to, the following:

1) To require any party to produce documents.
2) To receive relevant evidence and to rule upon the admission of evidence and offers of proof.
3) To take or cause depositions to be taken.
4) To regulate the course of the hearing and the conduct of the parties and their counsel.
5) To hold conferences for the settlement or simplification of issues or for any proper purpose.
6) To consider the rule upon, as justice may require, all procedural and other motions appropriate in any adversary proceeding, except that a presiding officer other than *Freddie Mac* will not have the power to decide any motion to dismiss the proceeding or other motion which results in final determination of the merits of the proceeding.

Every party will have the right to present their case or defense by oral and documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts.  Irrelevant, immaterial, or unduly repetitious evidence shall be excluded.

**1003
Conduct of
Hearings
(continued)**

All hearings will be private and will be attended only by the parties, their representative or counsel, witnesses (while testifying), and other persons having an official interest in the proceedings.

Hearings will be recorded and transcripts will be made available to any party upon payment of the cost thereof.  A copy of the transcript of the testimony taken at any hearings, duly certified by the reporter, together with all exhibits, all papers and requests filed in the proceedings, and any briefs or memoranda of law filed in the proceedings shall be deemed the record at such proceedings.

**1004
Recommended
Decision**

The presiding officer will within 30 days of the completion of the hearing, serve upon each party and certify to *Freddie Mac* for decision the entire record of the hearing.  The record will include his recommended decision, the transcript, and the exhibits (including, on request of any of the parties, any exhibits excluded from evidence or tenders of proof), exceptions, rulings, and all briefs and memoranda filed in connection with the hearing.

**1005
Final Decision**

*Freddie Mac*'s Chief Executive Officer, or that person's designee, will review the appeal of the applicant, or *approved insurer* and the hearing record, if any, before rendering a decision.

The Chief Executive Officer or that person's designee, will then render a decision in writing either affirming, reserving, or modifying *Freddie Mac*'s prior determination to reject, disqualify or suspend.  The decision will be made, and notice of it will be given to the applicant or *approved insurer* in the ordinary course of business.

**Appeals**

Private Mortgage Insurer Eligibility Requirements

# Exhibit 1, NAIC Mortgage Guaranty Insurance Model Act

**Please contact NAIC at [WWW.NAIC.ORG](WWW.NAIC.ORG) for a copy of the *Mortgage Guaranty Insurance Model Act*.**

# Exhibit 2, New Product or Program/ Existing Product or Program Revisions Considerations for Periodic Report Submissions

| Information Type | Detail Description |
|---|---|
| Legal Considerations | 1. Any need to change the Uniform Instruments, such as the Note, Mortgage, Deed of Trust or the need for a Rider or Addendum<br>2. Any conflict with any provision of the Uniform Instruments<br>3. Any changes to existing Primary or Pool Master Policies, including endorsements whether general or state specific<br>4. Any need for special disclosures to borrowers<br>5. Laws (state or federal) that could impact the product or its use by originators<br>6. Analysis of product/program, including specific requirements or parameters in relation to anti-predatory lending laws and Freddie Mac's anti-predatory lending policies or "fair lending" laws and regulations<br>7. Any involvement of non-mortgage insurer third-party relationship necessary for product offering |
| Operations | 8. Need to develop documentation, data dictionary and description of data elements necessary to support this product, if different from standard products<br>9. Need for special tracking of product<br>10. Any request for a reporting regimen between Freddie Mac and the insurer, including proposed reporting schedules |
| Credit/Collateral/LP | 11. Compatibility with LP or other AUS and Freddie Mac Seller/Servicer underwriting guidelines |
| Securitization Considerations | 12. Eligibility for and or compatibility with existing credit enhancements<br>13. Product features that may impact TBA securitization<br>14. Product features that may impact delivery under Freddie Mac cash programs |
| Servicing | 15. Ability of existing servicing systems to support product<br>16. Need for special servicing guidelines, policies or procedures<br>17. Need for changes in Freddie Mac claims submission/processing |
| Marketing | 18. Implementation timeline<br>19. Any need of or request for Freddie Mac involvement or use of our name<br>20. Any need for joint product training |

# Exhibit 3, Annual Certification

**Instructions:**

Requirements for annual filing are noted in Section 802, Annual Reports, of the *eligibility requirements*. By **April 15** of each year each *approved insurer* must submit (unless available on or through links on the web site of the insurer or its parent company):

1)   Certificate of Compliance (form noted below)
2)   The annual Convention Statement
3)   The audited financial statements or Form 10K, and any required schedules as indicated in Section 802 (reconciliation of the consolidated financial statements included in the Form 10K with the statutory financial statements of the *approved insurer* must be provided as soon as available if not typically available by April 15)
4)   Changes in generally applicable premium rates for its most commonly insured loans
5)   The *approved insurer*'s actuarial opinion

Areas of noncompliance with the *eligibility requirements* must be identified on the Certificate of Compliance. If a request for a temporary waiver from the *eligibility requirements* is made, an explanation of the situation, supporting documentation, and an action plan demonstrating steps to resolve the noncompliance issue must accompany the certificate.

## Certificate of Compliance

(Date)

Freddie Mac
Counterparty Credit Risk Management
MS D3A
1551 Park Run Drive
McLean, Virginia 22102

Dear Sir or Madam:

This Certificate of Compliance is furnished to you pursuant to Section 100 of the Federal Home Loan Mortgage Corporation's <u>Private Mortgage Insurer Eligibility Requirements</u> (Eligibility Requirements).

We have read the Eligibility Requirements and we have made, or caused to be made, under our supervision, a review to determine compliance therewith.

To the best of our knowledge and belief, (NAME OF COMPANY) was in compliance with all of the Eligibility Requirements as of December 31, 20XX (preceding calendar year), [except (NUMBER AND NAME OF SECTION) for which a request for temporary waiver is enclosed].

Sincerely,

Authorized Officer

---

# Glossary

| | |
|---|---|
| **Admitted Assets** | Assets that are recognized and accepted by state insurance laws in determining the solvency of insurers or reinsurers. |
| **Affiliate or Affiliated** | With respect to any person (including any natural person or corporation, business trust, general or limited partnership, limited liability company, limited liability partnership, or other similar organization or legal entity), a corporation, business trust, general or limited partnership, limited liability company, limited liability partnership, or other similar organization or legal entity: |

1) Where the person directly or indirectly owns or controls 10% or more of the voting shares or voting rights, through stock ownership or in any other manner, or
2) Where the person is a *mortgage enterprise* and directly or indirectly owns or controls, either jointly or severally with other *mortgage enterprises*, 10% or more of the voting shares or voting rights, through stock ownership or in any other manner, or
3) Where the person controls in any manner the election of a majority of the directors or trustees or members of the governing body, or
4) Where the person is a *mortgage enterprise* and, either jointly or severally with other *mortgage enterprises*, controls in any manner the election of a majority of the directors or trustees or members of the governing body, or
5) Which has a majority of the directors or trustees or members of the governing body who are also directors or trustees or members of the person's governing body, or
6) Which has the same ultimate parent company as the person.

| | |
|---|---|
| **Approved Insurer** | A private *mortgage guaranty insurance company* that has been duly approved by *Freddie Mac* as qualified to guarantee or insure mortgages purchased by *Freddie Mac*. |
| **Board** | The Board of Directors of *Freddie Mac*. |
| **Capital Support Agreement** | Any agreement that supports the *approved insurer*'s capital position, including but not limited to a guarantee by a parent or third-party, *reinsurance* or *risk sharing transaction,* or net worth maintenance agreement. |

**Glossary**

| | |
|---|---|
| **Captive Reinsurer** | An *affiliate* of a *mortgage enterprise,* or a group captive, sponsored captive or reciprocal captive, which: |

1)  is eligible and duly licensed by a *state* insurance commissioner, or an insurance company licensed and authorized to enter into *reinsurance* agreements under the laws of a foreign country to write *reinsurance* coverage, and

2)  reinsures mortgages insured by an *approved insurer* that are originated, purchased, sold or serviced by a *mortgage enterprise* which is *affiliated* or otherwise participates in the *captive reinsurer*, and

3)  may contain one or more trusts, provided that the trust reinsuring the risk of an *approved insurer* may only reinsure *mortgage guaranty insurance* on first lien mortgages secured by *1-4 unit residential properties* and the assets of the trust may not be cross-collateralized with any other *approved insurer*'s trust(s), and

4)  does not continually maintain:

   a)  A minimum *total policyholder's surplus* of $25,000,000, and

   b)  A Fitch rating of AA or AAA, Moody's rating of Aaa or Aa, or an S&P rating of AA or AAA.

| | |
|---|---|
| **Ceding Commission** | A commission paid to a ceding insurer by a reinsurer to reimburse the ceding insurer for underwriting and administering reinsured *mortgage guaranty insurance* coverage. |
| **Certificate of Authority** | The license or document granted by a *state* to a private mortgage insurer authorizing such private mortgage insurer to engage in the business of *mortgage guaranty insurance* in such *state*. |
| **Combined Ratio** | The sum of the loss and *underwriting (expense) ratios* as calculated on the *Freddie Mac* Quarterly Report, Form 443. |
| **Contingency Reserve** | A reserve required by statute or regulation generally equal to 50 percent of premiums earned.  Such reserve must be maintained for a period of 10 years, unless earlier related as a result of losses in excess of 35 percent of the premiums earned. |
| **Convention Statement** | The National Association of Insurance Commissioners (*NAIC's*) Annual Convention Statement. |

Private Mortgage Insurer Eligibility Requirements

| | |
|---|---|
| **CMSA** | The Consolidated Metropolitan Statistical Area, which shall have the same meaning as used by the U.S. Office of Management and Budget (OMB). |
| **Delegated Underwriting** | A contractual arrangement between an insurer and a lender under which the insurer permits the lender to commit the insurer to insure loans originated by the lender provided the loans meet certain underwriting guidelines.  Also referred to as "modified" or "certified" underwriting. |
| **Disqualification** | The complete removal of an insurer from *Freddie Mac*'s list of *approved insurers*. |
| **Earned Premium** | The gross premium less premiums returned to policyholders less *unearned premiums*. |
| **Eligibility Requirements** | *Freddie Mac*'s *Eligibility Requirements for Private Mortgage Insurers* and all of the requirements contained therein. |
| **Freddie Mac** | The Federal Home Loan Mortgage Corporation. |
| **Insured** | The lender that is covered by private *mortgage guaranty insurance.* |
| **Insurance-in-Force** | The aggregate of the unpaid principal balance of all mortgage directly insured and if a portion of any insurance risk is reinsured, the insurer accepting such risk shall add the same percentage of the unpaid principal balance of the reinsured mortgage as the percentage of risk accepted (assumed risk) and the insurer ceding such risk (ceded risk) shall deduct that same percentage. |
| **Loss Ratio** | The ratio of incurred losses to net premium earned determined in accordance with statutory accounting practices. |

**Glossary**

| | |
|---|---|
| **Liquid Assets** | Liquid investments that qualify as insurance company investments under the laws and regulations of the *state* of its domicile and the standards and interpretations of the *NAIC*. |
| **Material** | Any change, event, or information where there is a substantial likelihood that such change, event or information either individually or together with other changes, events, or information is relevant to *Freddie Mac,* including without limitation *Freddie Mac*'s determination of the safety and soundness or claims-paying ability of the *approved insurer* and/or the value of the insurance provide to *Freddie Mac* by the *approved insurer*. The SEC's regulations that govern securities registration and disclosure can be used as a guideline to evaluate whether such change, event, or information may be relevant to *Freddie Mac*. |
| **Model Act** | The Mortgage Guaranty Insurance Model Act promulgated by the *NAIC*. |
| **Mortgage Guaranty Insurance** | The insurance or guarantee against financial loss by reason of nonpayment of principal, interest and other sums agreed to be paid under the terms of a note, bond or other evidence of the indebtedness secured by a mortgage, deed of trust or other instruments constituting a first lien or its equivalent, or charge on personal property, or on real property (which terms shall not include any property commonly known as a "mobile home") that is an improvement designed for occupancy as a residential structure. |
| **MSA** | The Standard Metropolitan Statistical Area, which shall have the same meaning as used by the U.S. Office of Management and Budget (OMB). |
| **Mortgage Enterprise** | A mortgage broker, lender, seller, servicer or mortgage insurance master policy holder. The term does not include a government sponsored enterprise. |
| **Mortgage Payment Record** | A historical record produced by a lender that documents the payment pattern of a borrower. Such record would indicate the amount of each due payment, the date due and payable, and the date the payment was received. |

| | |
|---|---|
| **NAIC** | The National Association of Insurance Commissioners. |
| **Net Risk-in-Force** | The net dollar amount (retained after reinsurance) equal to, in the case of primary insurance, the sum of each insured mortgage loan's current principal balance multiplied by such loan's coverage percentage or, in the case of pool insurance, the remaining aggregate loss limit. |
| **1-4 Unit Residential Properties** | Real estate on which there is located a structure designed principally for the residential use by one to four families (including cooperatives). |

**Qualified Reinsurer**

A qualified reinsurer is one of the following:

1) A *Type I insurer* unaffiliated with the ceding *approved insurer*, or
2) An *affiliate* of the ceding *approved insurer*, so long as (i) the ceding *approved insurer* is a *Type I insurer,* (ii) the *affiliate's* sole purpose is to provide reinsurance for the ceding insurer*,* and (iii) no direct or indirect ownership interest in the *affiliate* is held by a *mortgage enterprise*, or
3) An insurer or reinsurer which is either:
   a) A domestic or foreign (outside the *state* of domicile) insurer, or an alien, or a branch of an alien, insurance company (an insurance company incorporated under the laws of a foreign country), eligible and duly licensed to write *reinsurance* coverage, provided that the insurer or reinsurer also continually maintains:
      i)  A minimum total policyholder's surplus of $25,000,000, and
      ii)  A Fitch rating of AA or AAA, Moody's rating of Aaa or Aa, or an S&P rating of AA or AAA, and
      iii)  Compliance with applicable state laws, regulations and requirements, or
   b) A *captive reinsurer.*

| | |
|---|---|
| **Reinsurance** | A binding contractual obligation with one or more reinsurers to reinsure all or a portion of the ceded insurance risks of an *approved insurer.* |
| **REO** | Real estate owned (REO) is property acquired through foreclosure or deed in lieu of foreclosure. |

**Glossary**

| | |
|---|---|
| **Restricted Asset Balance** | See definition of *Risk-to-Assets Ratio* |
| **Risk Sharing Transaction** | A transaction, agreement, program or arrangement involving the ceding of risk, premium, other payments, or other transfer of value. |
| **Risk-to-Assets Ratio** | The ratio of the *net risk-in-force* assumed by the reinsurer from the *approved insurer* relative to the associated *restricted asset balance*. The restricted assets are those assets set aside for the exclusive purpose of payment of the reinsurer's obligation on the risk assumed from the approved insurer. The *restricted asset balance* is the market value of the restricted assets, less unearned premium and loss reserves. |
| **Risk-to-Capital** | The ratio of *net risk-in-force* an insurer has relative to its *total policyholders' surplus.* |
| **Run-off** | A period or status when an *approved insurer* no longer issues new *mortgage guaranty insurance* policies but continues to renew existing *mortgage guaranty insurance* policies. |
| **State** | Including the several states, the District of Columbia, the Commonwealth of Puerto Rico, Guam, U.S. Virgin Islands and other territories and possessions of the United States. |
| **Suspension** | An *approved insurer's* status when *Freddie Mac* will not purchase mortgages insured by an *approved insurer* due to violations of the *eligibility requirements* or due to *approved insurer's* management practices, that as determined by *Freddie Mac*, present a threat to the safety and soundness of the *approved insurer*. |
| **Total Policyholders' Surplus** | The sum of the policyholders' surplus, *contingency reserve* and deferred risk premium calculated in accordance with statutory accounting practices. This total is used in the calculation of the *risk-to-capital* ratio. |

| | |
|---|---|
| **Type I Insurer** | An *approved insurer* that is rated by at least two of the following three rating agencies - S&P, Moody's, and Fitch, and no rating is less than AA-/Aa3 by any listed rating agency. |
| **Type II Insurer** | An *approved insurer* that is 1) unrated or 2) rated by less than two of the following rating agencies - Fitch, S&P, or Moody's or 3) rated lower than AA-/Aa3 by any listed rating agency. |