**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MOORE, et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civ. No. 07-4296** |
| | : | |
| **GMAC MORTGAGE, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## O R D E R

Plaintiffs in this class action alleged that Defendants, in violation of the Real Estate Settlement Procedures Act, accepted kickbacks and fee splits from Private Mortgage Insurers to whom Defendants referred business. 12 U.S.C. § 2607(a), (b). On April 29, 2014, I preliminarily approved settlement and certified the class for settlement purposes. (Doc. No. 283.) Now before me is Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, Approval of Plan of Allocation, Appointment of Class Representatives, and Appointment of Lead Class and Class Counsel. (Doc. No. 290.)

There have been no objections to the proposed Settlement and only 6 of the 122,963 Class Members (defined here as a person or persons obligated on a reinsured loan) have opted out. I held a final approval hearing on September 17, 2014, at which there were no objectors. Because I conclude that the proposed Settlement Class meets the requirements of Rule 23 and that the proposed Settlement is fair, reasonable, and adequate, I will grant Plaintiffs' Unopposed Motion.

I will first address whether class certification is appropriate, and then evaluate the fairness of the settlement. In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig., 263 F.R.D. 226, 234 (E.D. Pa. 2009) (citing In re Ins. Brokerage Antitrust Litig., 579 F.3d

241, 257 (3d Cir. 2009)) ("When presented with an unopposed motion for class certification and settlement approval, a court must separate its analysis of the class certification issue from its evaluation of the settlement's fairness.").

## I.      Certification of Settlement Class

The Parties have proposed the following Settlement Class:

> All persons who obtained residential mortgage loans originated and/or acquired by GMAC Mortgage, GMAC Bank (now known as Ally Bank), and/or their affiliates on or after January 1, 2004, with private mortgage insurance which was reinsured by Cap Re.

To certify a class under Rule 23, I must conclude that Plaintiffs have met each of the four Rule 23(a) requirements and one or more of the Rule 23(b) requirements.  Fed. R. Civ. P. 23.  I construe Rule 23 liberally; "in a doubtful case . . . any error, if there be one, should be committed in favor of allowing a class action."  Eisenberg v. Gagnon, 776 F.2d 770, 785 (3d Cir. 1985).  In determining whether a proposed settlement class should be certified, however, courts must apply a more rigorous standard where "settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously."  In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 349-50 (3d Cir. 2010).  This ensures "that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members."  Id.

The proposed Settlement Class meets all four Rule 23(a) requirements: (1) at 122,963 Class Members, it is sufficiently numerous; (2) Class Members share legal and factual questions regarding Defendants' practice of collecting a portion of borrowers' mortgage insurance premiums for reinsurance services; (3) the Named Plaintiffs' claims typify those of the Class as they challenge the same conduct that would be challenged by the Class; and (4) Named Plaintiffs and Class Counsel will fairly and adequately represent Class interests.

In addition, the proposed Class meets the requirements of Rule 23(b)(3), which permits class action lawsuits when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that a class action is the superior method for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  Here, common questions of both fact and law "predominate," as Defendants' alleged conduct did not vary with regard to Class Members.  Furthermore, courts have found that class actions are the most efficient and consistent method of adjudicating a collection of RESPA claims such as these.  See Alexander v. Washington Mut., Inc., No. 07-4426, 2012 WL 6021098, at *5 (E.D. Pa. Dec. 4, 2012) (citing Cohen v. J.P. Morgan Chase & Co., 262 F.R.D. 153, 159 (E.D.N.Y. 2009)).

Accordingly, I certify the proposed Settlement Class.

## II.      Notice to the Class

I must "determine notice was appropriate before evaluating" the settlement on its merits. Alexander, 2012 WL 6021098, at *6.  The Notice provided to Class Members meets the requirements of Rule 23 because it clearly and concisely stated in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  On June 13, 2014, after conducting an address search, the Settlement Administrator, Garden City Group, Inc., sent by first class mail the Notice to all Class Members.  See id. (e)(1)(B) ("The court must direct notice in a reasonable manner to all class

members who would be bound by the proposal.").  The Notice clearly and concisely informed

the Class of its claims and the terms of the proposed Settlement.  The Notice also provided

instructions for opting out, gave the date for the Final Approval Hearing, and referred Class

Members to a website and toll-free phone number created to provide further information

regarding the Settlement.

The Class size increased from an estimated 66,000 Members at Preliminary Approval to

an actual 122,963 Members at Final Approval.  That increase does not render the Notice

inadequate.  The Notice provided in pertinent part:

> Cap Re has agreed to provide $6,250,000 . . . to establish the Settlement Fund.
> Subject to and in accordance with the terms and conditions of the Settlement
> Agreement, the Settlement Administrator shall provide to each Class Member that
> did not opt out . . . his or her distribution of the Net Settlement Amount . . . .
> Each Participating Class Member's Settlement Payment shall be a *pro rata*
> portion of the Net Settlement Amount.

(Doc. No. 292, Ex. 7.)  The Notice thus fairly apprised Class Members that each would receive a

*pro rata* share of the $6.25 million Settlement Fund, without any guarantee as to the cash value

of that share.  It did not provide an estimated recovery amount or a projected Class size from

which Class Members could calculate such an amount.  No Class Members objected to this part

of the Notice.

In an abundance of caution, I questioned counsel at the Final Approval hearing and

satisfied myself that it was not necessary to distribute a revised Notice that included a per Class

Member recovery figure.  Class Counsel observed, *inter alia*, that Class size often changes from

the estimates at preliminary approval and that here, Preliminary Approval papers and Class

Certification briefs explicitly provided that the Class size estimates were subject to change.  (See

Pl.'s Unopposed Mot. for Prelim. Approval of Settlement, Doc. No. 272 at 44 ("[T]he Class will

include an estimated amount of around 66,000 Reinsured Loans – the exact number is subject to

verification. The Parties have agreed to conduct confirmatory discovery regarding the contours of and size of the Settlement Class."); Pl.'s Mem. of Law in Supp. of Class Certification, Doc. No. 180 at 41 (estimating that Cap Re reinsured 49,377 loans with only one of seven private mortgage insurers to which GMAC referred business)).

Moreover, on August 6, 2014, Class Counsel posted its Memorandum of Law in Support of the Final Approval (which described the increase in Class size) on the settlement website. (Doc. No. 290 at 3.) Because the deadline to object was September 17, 2014, any Class Member aggrieved by the increase could have objected during this period. No Class Member did.

In these circumstances, I find that the Notice meets Rule 23.

### III.    Approval of Class Action Settlement and Allocation Plan

I may approve a class action settlement under Rule 23 where, as here, it is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2).

Courts in this Circuit give considerable weight and deference to the views of experienced counsel as to the merits of an arms-length settlement. In re Auto. Refinishing Paint Antitrust Litig., MDL 1426, 2004 WL 6248154, at *2 (E.D. Pa. Sept. 27, 2004); see also Petruzzi's, Inc. v. Darling-Del. Co., 880 F. Supp. 292, 301 (M.D. Pa. 1995) ("[T]he opinions and recommendations of . . . experienced counsel are . . . entitled to considerable weight."); Lake v. First Nationwide Bank, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arms-length and in good faith"). "A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." In re Linerboard Antitrust Litig., 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003); see also In re Cendant Corp. Litig., 264 F.3d 201, 233 n. 18 (3d Cir. 2001).

In <u>Girsh v. Jepson</u>, the Third Circuit identified nine factors to assist courts in determining whether a class action settlement should be approved as "fair, adequate and reasonable." 521 F.2d 153, 157 (3rd Cir. 1975). These factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

<u>In re Cendant</u>, 264 F.3d at 232. When appropriate, courts should also consider:

> (10) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (11) the existence and probable outcome of claims by other classes and subclasses; (12) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (13) whether class or subclass members are accorded the right to opt out of the settlement; (14) whether any provisions for attorneys' fees are reasonable; and (15) whether the procedure for processing individual claims under the settlement is fair and reasonable.

<u>Prudential</u>, 148 F.3d at 323 (numbers added). After applying these factors here, I conclude that the Settlement is fair, adequate, and reasonable.

First, the complexity, expense, and likely duration of the litigation support settlement. In seven years of litigation, the Parties had participated in multiple mediation sessions, fully briefed dispositive motions, took discovery, and engaged expert witnesses. A protracted trial and appeal were nearly certain because the Parties were deeply divided on class certification, liability, and damages. Accordingly, the Parties will benefit from the time and resources saved by avoiding

further litigation.  Fleisher v. Fiber Composites, LLC, No. 12-1326, 2014 WL 866441, at *11 (E.D. Pa. Mar. 5, 2014).    Additionally,  GMAC's  bankruptcy  during  the  litigation  added considerably to the complexity and difficulty of the case.

The second Girsh factor weighs heavily in favor of settlement because no Class Member has objected and only 6 have opted-out.  See Chakejian v. Equifax Info. Servs., LLC, 275 F.R.D. 201, 212 (E.D. Pa. 2011) (class of 40,000 reacted favorably when only 7 opted out and 2 objected).  The increase in Class size does not impugn the absence of objections (or, indeed, the fairness of the Settlement).  As I discussed, the Notice fairly apprised Class Members that each would receive a *pro rata* share of the Settlement Fund without any calculation of the value of that share.  As I have also discussed, any estimates of the Class size before Final Approval were subject to change.

The  stage-of-proceedings  factor  also  supports  settlement:  the  Parties  have  conducted extensive discovery on class certification and whether the reinsurance agreements transferred risk.  Class Counsel therefore had considerable information from which to make an informed judgment regarding the reasonableness of the proposed Settlement.

The fourth, fifth, and sixth Girsh factors—the risks of establishing liability and damages and of maintaining the class action through the trial—favor settlement.  Liability and damages were both hotly contested, and would have required expensive expert testimony on both sides, reducing any judgment to Class Members.  Litigation would likely generate lengthy appeals, because arguments raised by Defendants over the course of litigation have yet to be tested in the circuit courts.  Finally, had the Parties not settled, Defendants would have continued to oppose class certification.  See In re Certainteed Fiber Cement Siding Litig., MDL 2270, 2014 WL

1096030, at *18 (E.D. Pa. Mar. 20, 2014).  By arriving at a fair and reasonable settlement, Class

Counsel have averted the myriad risks involved in litigating this case to verdict.

    Because Cap Re (the Defendant responsible for paying the Settlement) is winding down

and does not have insurance for RESPA violations, and because it is unlikely Plaintiffs could

recover a substantial award from Defendant GMAC Mortgage (which filed bankruptcy during

this litigation), Defendants are unable to withstand a greater judgment.  See Alexander, 2012 WL

6021098, at *9 (factor weighed in favor of settlement because Washington Mutual filed

bankruptcy during the case).  Indeed, I ordered Cap Re at preliminary approval to "retain $6.25

million in available cash to pay . . . the Settlement Agreement" due to concerns about

Defendants' financial condition.  (Doc. No. 283 at ¶ 17.)

    Finally, the eighth and ninth factors weigh in favor of settlement because of Defendants'

financial conditions and the risks of continued litigation, both of which I have described above.

The $51 gross payment per Class Member is lower than awards in recent RESPA cases.  See

Order at 8, Liguori v. Wells Fargo & Co., No. 08-479 (E.D. Pa. Feb. 8, 2013) ($173 per class

member); Mem. in Supp. of Final Approval of Settlement at 36, Alston v. Countrywide Fin.

Corp., No. 07-3508, (E.D. Pa. July 29, 2011) ($125).  Defendants in those cases, however, were

in far better financial positions than Defendants here.  See Alexander, 2012 WL 6021098, at *10

(awarding $94 per class member in RESPA case because of defendants' "distressed financial

condition").   In sum, the $6.25 million settlement is reasonable, because Class Members

recovered from Defendants without facing any further protracted, uncertain litigation.

    Several of the non-exclusive factors developed by the Third Circuit also support the

Settlement: the attorneys' fees proposed by Class Counsel (and awarded in a separate Order of

this date) are reasonable, Class Members have been afforded the opportunity to opt out of the Settlement Class, and the procedure for processing individual claims is fair and reasonable.

Taking into consideration all the benefits obtained for the Class and the risks of litigation, I find that the Girsh factors strongly support the Settlement.

Like the Settlement Agreement, the Plan of Allocution must be fair, reasonable, and adequate.  In re Ikon Office Solutions, Inc. Sec. Litig., 194 F.R.D. 166, 184 (E.D. Pa. 2000).  "As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight."  In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001).  Here, participating Class Members will receive a *pro rata* share of the Settlement Fund and in no circumstance will any portion of the Fund revert to Defendants.  No Class Member has objected to the Plan, which Class Counsel described in its Notice to Class Members.  Accordingly, I conclude that the Plan is fair, adequate, and reasonable.

**AND NOW**, this 18th day of September, 2014, upon consideration of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, Approval of Plan of Allocation, Appointment of Class Representatives, and Appointment of Lead Class Counsel and Class Counsel (Doc. No. 290) and the Parties' Settlement Agreement executed December 10, 2013, and after a duly-noticed final approval hearing on September 17, 2014, it is hereby **ORDERED** as follows:

Except as otherwise defined herein, all capitalized terms used in this Order shall have the same meaning ascribed to them in the Settlement Agreement.

1.      Pursuant to Rule 23(e), the terms of the Settlement Agreement dated December 10, 2013 are finally approved as fair, reasonable, and adequate in light of the factual, legal, practical, and procedural considerations raised by this Action.

2.      Solely for the purpose of Settlement in accordance with the Settlement Agreement, and pursuant to Rules 23(a) and (b)(3), this Court hereby finally certifies the following Class:

> All persons who obtained residential mortgage loans originated and/or acquired by GMAC Mortgage, GMAC Bank (now known as Ally Bank), and/or their affiliates on or after January 1, 2004, with private mortgage insurance which was reinsured by Cap Re.

3.      The Court appoints Named Plaintiffs Donna Moore, Frenchola Holden, and Keith McMillon as representatives of the Class.

4.      Pursuant to Rule 23(g), the Court appoints Kessler Topaz Meltzer & Check, LLP; Bramson, Plutzik, Mahler & Birkhaeuser, LLP; Berke, Berke & Berke; and Travis & Calhoun, P.C as Class Counsel.  The Court further appoints Kessler Topaz Meltzer & Check, LLP as Lead Class Counsel.

5.      The Court finds that, pursuant to Rules 23(a) and (b)(3), in light of the current posture of this case as a class action:

    a.   The Class is so numerous that joinder of all members is impracticable.

    b.   There are questions of law or fact common to the Class.

    c.   The claims of the Named Plaintiffs are typical of the claims of the Class.

    d.   Named Plaintiffs and Class Counsel have fairly and adequately protected the interests of the Class and will continue to do so.

    e.   The questions of law or fact common to members of the Class, and which are relevant for settlement purposes, predominate over the questions affecting only individual members.

    f.   Certification of the Class is superior to other available methods for the fair and efficient adjudication of the controversy.

6.      The Court finds that the Settlement is fair, adequate and reasonable. Accordingly, the Settlement should be and is approved and shall govern all issues regarding the Settlement and all rights of the Parties, including the Class Members. Each Class Member who has not opted out of the Class shall be bound by the terms and provisions of the Agreement and this Order, including the releases and covenants not to sue set forth in the Agreement, which are hereby incorporated by reference and become part of the final judgment in this Action.

7.      The Settlement Administrator shall cause the Settlement Fund to be disbursed in accordance with the Settlement Agreement. Specifically, within seventy-five (75) days of the Settlement Effective Date, the Settlement Administrator shall cause a check to be mailed to each Participating Class Member as payment under the terms of the Settlement Agreement, as provided therein.

8.      Within five (5) business days following the Settlement Effective Date, the Settlement Administrator shall disburse to the Named Plaintiffs the respective compensation specified below as Case Contribution Awards, which the Court finds to be warranted by the activities and leadership undertaken by each of the Named Plaintiffs:

>       Donna Moore: $5,000

>       Frenchola Holden: $5,000

>       Keith McMillon: $5,000

9.      The Court having awarded Class Counsel attorneys' fees and costs in the Order of this same date, the Settlement Administrator shall release from the Settlement Fund the amount of the fee and expense awards made in this case, as set forth in the Fee Order, to Lead Class Counsel after the Settlement Effective Date, pursuant to Section 5.5 of the Settlement

Agreement. Lead Class Counsel shall disburse such award among Class Counsel as required by the Settlement Agreement.

10.     The Settlement Administrator and the Parties, consistent with the terms and deadlines established in the Settlement Agreement, shall prepare the reports and calculations; make any payments, adjustments, or remittances required; and otherwise comply with their respective obligations under Article IV of the Settlement Agreement.

11.     Pending Complete Settlement Approval, as defined in the Settlement Agreement, Cap Re shall not (i) dissolve or take any action to cause its dissolution; (ii) cause any dividend or payment (in cash or in kind) to be made to GMAC Mortgage or any affiliate thereof except such usual and customary payments as may be necessary to the conduct of the business of Cap Re in the ordinary course; or (iii) make any unusual payments to any third-party outside the ordinary course of business except as may be required to comply with applicable law, court order, regulation or regulator request; provided; however, and for the avoidance of doubt, Cap Re, in its sole discretion, shall be entitled to retain and compensate third-party consultants and professionals in connection with the evaluation of strategic business alternatives; provided, further, however, that the foregoing shall not preclude Cap Re in its sole discretion from taking any action to sell or otherwise monetize its assets, which in the reasonable business judgment of its officers and directors is intended to maximize the value thereof, provided Cap Re retains the net proceeds of any such transaction.

12.     Cap Re's obligations under paragraph 11 above shall terminate upon Complete Settlement Approval or, thirty (30) days after the termination of the Settlement Agreement according to its terms.

13.     All claims against Defendants are hereby dismissed on the merits and with prejudice.

14.     Each and every Participating Class Member is permanently barred from bringing, joining, or continuing to prosecute against Defendants any claim that was brought in this Action or otherwise for which a release and covenant not to sue is being given under the Settlement Agreement.

15.     This Court hereby retains jurisdiction over all matters relating to the interpretation, implementation, effectuation, and enforcement of the Settlement Agreement. The Court further retains jurisdiction to enforce this Order.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*

_____

September 18, 2014                                          Paul S. Diamond, J.